No. 20-12781-BB

# In the United States Court of Appeals for the Eleventh Circuit

---

DAVID SOSA,

Plaintiff-Appellant,

v.

SHERIFF WILLIAM SNYDER OF MARTIN COUNTY,
FLORIDA *in an official capacity*,
MARTIN COUNTY, FLORIDA,
DEPUTY M. KILLOUGH, *individually*,
DEPUTY SANCHEZ, *individually*, and
JOHN DOE MARTIN COUNTY DEPUTIES,

Defendants-Appellees.

---

On Appeal from the United States District
Court for the Southern District of Florida
19-cv-14455-DMM

---

BRIEF OF APPELLANT DAVID SOSA

*Submitted by*:
Randall L. Kallinen
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77102
Telephone: (713) 320-3785

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in 11th Circuit Rule 26.1-2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Arthur, David* — Martin County Attorney Department — Attorney for Appellee Martin County;

*Barranco, Summer* — Purdy, Jolly, Giuffreda, Barranco & Jisa, P.A. — Attorney for Appellees;

*Kallinen, Randall* — Kallinen Law PLLC — Attorney for Appellant;

*Killough, M.* — Defendant-Appellee;

*Martin County, Florida* — Defendant-Appellee

*Middlebrook, Donald* — United States District Judge in the Southern District of Florida;

*Sanchez* — Defendant-Appellee

*Snyder, William* — Martin County Sheriff's Office — Defendant-Appellee;

*Sosa, David* — Plaintiff-Appellant.

# STATEMENT REGARDING ORAL ARGUMENT

The basis of this lawsuit is factually intensive, and Appellant respectfully suggests that the Court would benefit from hearing oral arguments. David Sosa moves pursuant to Federal Rule of Appellate Procedure 34(a) to add this case to the argument calendar. This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) the decisional process would be significantly aided by oral argument.

Further elucidation beyond the cold facts in the briefs would assist the Court in these proceedings. Appellant seeks a reversal of the district court based upon the application of the overlooked facts in this case to the law, in addition to legal error, and it is an understanding of the nuances in these facts that oral argument would benefit.

# TABLE OF CONTENTS

Certificate of Interested Persons ......................................................... i

Statement Regarding Oral Argument ................................................ ii

Table of Contents .............................................................................. iii

Table of Citations .............................................................................. v

Jurisdictional Statement .................................................................. vii

Statement of the Issues ...................................................................... 8

Statement of the Case ......................................................................... 9

    Course of Proceedings ...................................................................... 9

    Statement of Facts ......................................................................... 10

    Standard of Review ....................................................................... 12

Summary of the Argument ............................................................... 12

Argument ........................................................................................... 13

    I. A trial could determine that probable cause did not exist to justify Sosa's arrest or detention, and that Sosa was not afforded Due Process while detained. ....................................... 15

        A. *It was not a reasonable mistake to arrest Sosa because of his name alone in light of the differences between the identifiers, and the fact that this Sheriff's Office had falsely arrested him before.* ................................................................................. 16

        B. *Sosa's three-day detention could not have been constitutional because of the differences in identifiers, availability of information, intimidation during his hearing, and his release three hours after his first false arrest.* ................................. 21

II. No Appellees are entitled to qualified immunity because Sosa's constitutional rights were violated, and his rights were obvious and established at the time of his arrest and detention.    24

III. A *Monell* claim does exist against government Appellees.    27

    *A. Government Appellees' custom of ignoring previous false arrests constitutes deliberate indifference to 4th Amendment and Due Process rights.*    *28*

    *B. Government Appellees' custom was the plain and obvious cause of Sosa's false arrest by creating the conditions for repetitious false arrests.*    *29*

Conclusion    31

Certificate of Compliance    32

Certificate of Service    33

# TABLE OF CITATIONS

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................... 11

*Baker v. McCollan*, 443 U.S. 137 (1979) ..................................... 15, 20, 21

*Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ............................. 29

Belik v. Carlson Travel Grp., Inc., 864 F. Supp. 2d 1302 (S.D. Fla. 2011)

............................................................................................................ 28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ................................... 11

*Bickley v. Caremark RX, Inc.*, 461 F.3d 1325 (11th Cir. 2006) .............. 11

*Blackwell v. Barton*, 34 F. 3d 298 (5th Cir. 1994) ................................. 19

*Brinson v. Syas*, 735 F. Supp. 2d 844 (N.D. Ill. 2010) ............................ 18

*Brosseau v. Haugen*, 543 U.S. 194 (2004) .............................................. 25

*Caceres v. Port Authority of New York and New Jersey*, 646 F. Supp. 2d
    412 (S.D.N.Y. 2009) ..................................................................... 17, 26

*Cannon v. Macon County*, 1 F.3d 1558 (11th Cir. 1993) ......................... 21

*City of Canton v. Harris*, 489 U.S. 378 (1989) ....................................... 26

*Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002) ............................... 22, 27

*Gant v. Cty. of Los Angeles*, 765 F. Supp. 2d 1238 (C.D. Cal. 2011) ...... 18

*Glasscox v. City of Argo*, 2020 U.S. Dist. LEXIS 174658 (N.D. Ala. Sept.
    23, 2020) ........................................................................................... 29

*Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001) ............... 29

*Hill v. California*, 401 U.S. 797 (1971) ............................................ 16, 17

*Hope v. Pelzer* 536 U.S. 730 (2002) ..........................................26

*Hunt v. Gualtieri*, 2016 U.S. Dist. LEXIS 166577 (M.D. Fla. Dec. 2, 2016)

..................................................................................................28

*Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002)..................................24, 26

*Lewis v. City of W. Palm Beach*, 561 F.3d 1288 (11th Cir. 2009)...........27

*Martinez v. City of New York*, 340 Fed. Appx. 700 (2d Cir. 2009)..........18

*Maxwell v. City of Indianapolis*, 998 F.2d 431 (7th Cir. 1993) ........18, 26

*McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004)..................26, 27, 29

*Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257 (11th Cir. 2013).............11

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)................................26

*Poulakis v. Rogers*, 341 Fed. Appx. 523 (11th Cir. 2009) .......................24

*Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002)................14, 15, 16

*Rodriguez v. United States*, 54 F.3d 41 (1st Cir. 1995) ..........................18

*Romero v. City of Clanton*, 220 F. Supp 2d 1313 (M.D. Ala. 2002) ........29

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) .......................22

*Saucier v. Katz*, 533 U.S. 194 (2001).................................................23, 24

*Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007).............23, 24, 25

## Constitutional Provisions

U.S. Const. amend. V .................................................................15

U.S. Const. Amend. XIV, § 1 ...................................................15

# JURISDICTIONAL STATEMENT

Jurisdiction exists under 28 U.S.C. § 1331 federal question jurisdiction because this case arises under 42 U.S.C. § 1983 for an alleged violation of Appellant's civil rights. Jurisdiction also exists under 28 U.S.C. § 1343(3) to redress the deprivation of Appellant's civil rights. This Court has jurisdiction under 28 U.S.C. § 1291 as an appeal from the final decision of a district court, and under Federal Rule of Appellate Procedure 4.

This case was originally filed on November 19th, 2019, and the order dismissing the case was entered on June 24th, 2020. The order dismissing the case disposed of all parties' claims. This appeal is timely submitted on or before October 6th, 2020.

# STATEMENT OF THE ISSUES

I.   Whether probable cause indisputably justified Appellant's arrest and three-day detention despite his identifiers conflicting with those on the warrant.

II.  Whether any Appellees are entitled to qualified immunity.

III. Whether a *Monell* claim exists against government Appellees.

# STATEMENT OF THE CASE

## Course of Proceedings

David Sosa filed this civil rights lawsuit in the United States District Court for the Southern District of Florida, Fort Pierce Division. Doc. 1, 1. He filed a claim under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, and Fourteenth Amendment rights as a result of a false arrest and false imprisonment. Doc. 18, 9–11. He sought to hold liable the individual officers responsible for his arrest and detention (both named and unnamed), as well as the Sheriff in his official capacity, the Sheriff's Office, and Martin County, which is in charge of the Sheriff's Office for their policies and practices which caused the violations to his constitutional rights. *Id.* at 1. The district court dismissed the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 32, 1. It found that David had not sufficiently pled facts that could plausibly give rise to a constitutional violation. *Id.* at 8, 10. The existence of a constitutional violation is a threshold issue for qualified immunity and *Monell* liability, so the court expressly did not reach these issues. *Id.* at 5, 11.

**Statement of Facts**

David Sosa has lived in Martin County, Florida with his family since 2014. Doc. 18, 3–4. He is one among many thousands of "David Sosas" in the United States. *Id.* at 1–3. In November of 2014, David was stopped in a routine traffic stop by a Martin County Sheriff's deputy. *Id.* at 6. After running a warrant check, the deputy identified a warrant for another "David Sosa" that was arrested in Harris County, Texas for selling crack cocaine in 1992. *Id.* at 4. He was arrested on the warrant, despite protesting his innocence, and asking if any of his identifying information matched that on the warrant, which it did not. *Id.* at 6. The identifiers that did not match the warrant included: date of birth, a substantial height difference, forty-pound weight difference, one tattoo on the warrant suspect versus the tattoo-less Plaintiff-Appellant, and Social Security number. *Id.* at 4, 7. He was fingerprinted, detained for three hours, and released upon further investigation. *Id.* at 7. No record was made that *this* David Sosa was not the warrant suspect. *Id.*

On April 20, 2018, David was again pulled over by a Martin County Sheriff's deputy for a routine traffic stop, and was again arrested on the same warrant despite his claim of innocence, informing them of Martin County Sheriff's deputies prior false arrest for the same warrant, and different identifiers. *Id.* at 7–8. He continued to protest his innocence to the deputies at the jail in which he was detained. *Id.* at 8. The day after

his arrest, he was afforded a hearing before a magistrate; as he attempted to explain his innocence, he was threatened by Martin County jailers into silence, as he then believed it was a crime to speak with the judge. *Id.* On April 23, 2018, he was released after being fingerprinted again. *Id.* Over the course of his detention, he missed work, was unable to inform his employer of his absence, and had to pay to recover his truck, which had been impounded. *Id.* Again, no record was created which Martin County Sheriff's deputies could check on if this ever happened again. *Id.* To the day of filing this instant brief David Sosa still lives in Martin County in his house and will likely drive the streets and roads of Martin County for decades and it is very likely will again get stopped for a traffic violation or other reason.

Based on information and belief, David also alleges that Martin County and the Sheriff have arrested numerous individuals without probable cause based on warrant misidentification, and have established a pattern and practice of doing so. *Id.* at 11. In spite of that, and in spite of this sequence of events, neither agency has implemented adequate policies, procedures, or training to avoid future constitutional violations. *Id.* at 10–11. Something as simple as creating a file where individuals who have been previously detained or stopped due to other people's warrants could be created to which deputies could check in the event a question is raised as to identity.

**Standard of Review**

Courts of Appeals review Rule 12(b)(6) motions to dismiss *de novo*. *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013). The Court should consider the facts alleged in the complaint as true, and construe the facts and all reasonable inferences in the light most favorable to Appellant. *Id.*, *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006). A complaint must survive when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

# SUMMARY OF THE ARGUMENT

David Sosa was falsely arrested twice by the same Sheriff's Office because he was misidentified on the same 27-year-old warrant, and he was detained for three days during his second arrest, which is the basis for his § 1983 claim. He alleges here violations of the Fourth, Fifth, and Fourteenth Amendments for his false arrest and detention, but the case was dismissed below for failure to state a claim. But under the standard in *Iqbal*, he has pled more than enough facts for a plausible § 1983 claim, and none of the Defendant-Appellees are entitled to their relevant affirmative defenses.

More specifically, David has alleged that he was arrested on a warrant that only his name matched—all other identifiers including height, weight, date of birth, and Social Security number—were different. Further, despite the fact that he had been arrested on the same warrant before and released after three *hours*, he was detained for three *days* during his second arrest. Based on these facts, David has a plausible claim that the arresting officer acted made an unreasonable mistake, thus defeating probable cause, and that the booking and detention officers showed deliberate indifference by failing to investigate his innocence claim.

All of these disputed facts should also prevent the Court from granting qualified immunity or dismissing the *Monell* claim against the government agencies because such determinations require more facts through the discovery process.

# ARGUMENT

Two and a half years ago, David Sosa was pulled over for a routine traffic stop, and was arrested solely because his name (and only his name) matched a 27-year-old warrant. He was detained for three days before the sheriffs realized they had the wrong man—despite having arrested and released him three and a half years prior on the same warrant.

The district court dismissed David's case for failure to state a claim. In doing so, it said that probable cause indisputably existed and justified David's arrest and detention. But matching a person's name to a warrant and arresting them with no other matching identifiers cannot be the standard for probable cause; to say otherwise would put the thousands of "David Sosas" (and anyone else with a common name) at risk of arrest in Martin County because of their name. Millions drive or ride through Martin County on its freeways and roads every year. And in discussing David's detention, the district court failed to address the effect of David's first three-hour detention for false arrest and the intimidation he suffered during his hearing on his Due Process claim for false imprisonment. David will first show that he has pled sufficient facts to bring these constitutional claims to trial.

After dismissing David's constitutional claims out of hand, the district court expressly did not address qualified immunity. David will next show why qualified immunity cannot protect any of the Appellees here.

Lastly, the district court relied on the erroneous dismissal of David's constitutional claims to dispatch his claims against government Appellees. While individual officers may have violated David's constitutional rights, the government agencies' customs and practices set those officers up to violate David's rights and, without judicial redress, will allow them to continue committing such violations. David will finally

show that he has pled sufficient facts to support his claim against government Appellees.

## I. A trial could determine that probable cause did not exist to justify Sosa's arrest or detention, and that Sosa was not afforded Due Process while detained.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, . . . against unreasonable . . . seizures, shall not be violated." U.S. Const. Amend. IV. Seizures—in this case, an arrest— are considered reasonable when a law enforcement officer has probable cause to make the arrest. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1345– 46 (11th Cir. 2002). Probable cause generally exists when an arrest is made pursuant to a valid warrant, but arresting the wrong person may defeat probable cause. *See Id.* David Sosa has pled facts here that could defeat probable cause, and give rise to a plausible Fourth Amendment claim as enforceable through 42 U.S.C. § 1983. Dismissing the case through a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is therefore inappropriate here, as will be discussed in the first subsection below.

Similarly, the Fifth and Fourteenth Amendments guarantee that American citizens shall not be deprived of their liberty without due process of law. U.S. Const. amend. V, XIV, § 1. In the context of false arrest and false imprisonment, that right generally includes the right to

15

be heard, and the right to be released within a reasonable amount of time. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979). Again, David has pled facts that plausibly demonstrate a § 1983 claim that he was denied due process during his arrest and detention, making dismissal inappropriate. This claim will be discussed in the second subsection below.

> ### A. *It was not a reasonable mistake to arrest Sosa because of his name alone in light of the differences between the identifiers, and the fact that* this *Sheriff's Office had falsely arrested him before.*

This Court's precedent on false arrests based on misidentification stems from *Rodriguez v. Farrell*, in which it adopted a *totality of the circumstances* test to determine whether or not the arresting officer made a reasonable mistake. 280 F.3d at 1345–47 (citing *Hill v. California*, 401 U.S. 797, 802 (1971)) (other citations omitted). In that case, this Court held that only one "material" difference in identifiers—there, a self-reported five-inch height difference that the officer disputed during the arrest—could not transform a reasonable mistake into an unreasonable one in the totality of the circumstances. *Id.* at 1347–48. In doing so, it noted that while some identifiers were different[1], those differences were not material because they were "similar" to false information the fugitive had previously provided under an alias that matched the plaintiff's name,

---

[1] Differences included Social Security number, date of birth and addresses in neighboring towns. Additionally, the Court noted that plaintiff's six tattoos to fugitive's four was similar because plaintiff had "no fewer" tattoos than the fugitive, and they were mostly in the same locations.

and that the fugitive also used numerous false identifiers. *Id.* at 1347–48, 1347 nn. 11–13 (citations omitted).

By adopting this test, the Court expressly observed three facts: first, the "reasonable mistake" standard on which the test is based is derived from *Hill*; second, it based its test on the Seventh Circuit, which is "consistent with" the rest of the circuits; and third, its rule is less broad than its view of the Seventh Circuit's rule, which states that an officer acts reasonably if a "person's name matches the name listed on . . . [a] warrant." *Id.* at 1346–47, 1346 n. 9 (citations omitted). Each fact is important here for its own reason: first, *Hill* defines reasonableness as "sufficient probability"; Second, since the circuits were (and still are) consistent with this test, other circuits' applications of the test are both relevant and illuminating here; and third, this Court already recognizes the necessity of more than a name[2] to match a warrant in order to ensure fairness. 401 U.S. at 804.

The next step, then, is to survey which differences other circuits have found to be "reasonable mistakes" or still give rise to "sufficient probability," and when that line is crossed.

Beginning with the latter, *Caceres v. Port Authority of New York and New Jersey* illustrates a fairly extreme case. 646 F. Supp. 2d 412

---

[2] Implied here is the fact that if a person's name matches a warrant, their sex will very likely match and their race may also match. *See Rodriguez*, 280 F.3d at 1346–47 (discussion of 7th Circuit cases where the name and sex matched in all three misidentification cases, and the race matched in two of three).

(S.D.N.Y. 2009), *vacated in part and remanded on other grounds*, 631 F.3d 620 (2d Cir. 2010). There, the plaintiff was arrested after waiting two hours at the station trying to recover his impounded vehicle on a John Doe warrant that did not match his race, complexion, height, or date of birth. *Id.* at 422–23. Further, the plaintiff continually asserted his innocence and that he had been mistakenly arrested on the same warrant previously. *Id.* Despite the officers' concern about the discrepancy, they arrested him anyway because an error in the local criminal record and warrant database. *Id.* at 418, 422–23. Because of the significant discrepancies in the face of the warrant hit, the court held that the jury was reasonable in finding that the defendant lacked probable cause. *Id.* at 424.

Closer cases have also been sent to the jury. *See, e.g., Maxwell v. City of Indianapolis*, 998 F.2d 431, 434–36 (7th Cir. 1993) (Affirming denial of summary judgment where there was a six-inch, 100-pound difference and different missing fingertips, noting that "[w]hile the officers may prefer a standard of 'better safe than sorry,' they cannot hope to bootstrap an improbable threat to the community into probable cause."); *Gant v. Cty. of Los Angeles*, 765 F. Supp. 2d 1238, 1251 (C.D. Cal. 2011) (Denying summary judgment where the name and race matched, but there was a seven-inch 120-pound difference, saying that whether there was a "reasonable belief" was "a question of fact for the jury."), *rev'd in part on other grounds*, 722 F.3d 608 (9th Cir. 2014);

*Brinson v. Syas*, 735 F. Supp. 2d 844, 853–54 (N.D. Ill. 2010) (Denying summary judgment where the plaintiff's name matched one of the suspect's aliases, the race matched, and the age roughly matched, but there was an eight-inch height difference, explaining "that regardless of whether a valid arrest warrant exists, a question of fact remains as to whether the Officers reasonably believed that they were arresting the right person.").

"Reasonable mistakes," on the other hand, are generally determined as a matter of law only in clear cases. *See, e.g., Martinez v. City of New York*, 340 Fed. Appx. 700 (2d Cir. 2009) (reasonable mistake where there was only a two-inch, twenty-pound discrepancy); *Rodriguez v. United States*, 54 F.3d 41, 46 n. 4 (1st Cir. 1995) (reasonable mistake where there was only a three-inch, twenty-pound difference); *Blackwell v. Barton*, 34 F. 3d 298, 303–04 (5th Cir. 1994) (reasonable mistake where they were "of the same height and weight, sex, race, age, nickname, and at the location where he expected to find [her]").

Here, whether Appellees made a "reasonable mistake" is an open question of fact that could plausibly subject Appellees to liability. David has alleged that all identifiers apart from his name—including height, weight, lack of tattoos, Social Security number, date of birth, and address—differed from those on the warrant, and each of those identifiers either individually or collectively could plausibly lead to a determination that Appellees' mistake was not reasonable, as the courts

in *Cacares* and the other close cases found.  A trial and the discovery process are necessary to make that determination, in order to clarify the exact differences in the identifiers on the warrant versus David himself, what information the officer had available at the time of the arrest, and whether the arresting officer knew of David's first false arrest. Such alleged differences in no way resemble the clear cases in which probable cause was found as a matter of law.

Those reasons alone should defeat a Rule 12(b)(6) motion to dismiss. But there are more factual questions at play here that are included in the totality of the circumstances. First, what is the effect of a Real ID Act-compliant license[3] with respect to the trustworthiness of the information it provides? Second, what is the effect of the ever-improving technology available to police both in the station and in the field? And third, can it truly be "sufficiently probable" that *this* David Sosa out of thousands is *the* David Sosa from a 27-year-old warrant from another state for a nonviolent offense if something as clear as his height, date of birth, or Social Security number fails to match the warrant, such that an arrest and three-day detention is justified?

All of these questions deserve a trial, and should be answered by a fact finder after a formal discovery process. But more importantly than that, this Court has already recognized the impropriety of allowing police

---

[3] Although this fact was not specifically raised below, David's license at the time of his arrest in 2018 reflected his 2014 Martin County address, and Florida had long issued Real ID Act-compliant licenses by then.

to arrest potential warrant suspects based on name alone, and David asks for that proposition to be reaffirmed here.

>   B. *Sosa's three-day detention could not have been constitutional because of the differences in identifiers, availability of information, intimidation during his hearing, and his release three* hours *after his first false arrest.*

Analysis of Due Process claims for false imprisonment generally begin by examining the Supreme Court's standard in *Baker v. McCollan.* 443 U.S. 137 (1979). There, the Court found that the plaintiff's three-day detention over a holiday weekend based on a warrant for his brother who used the plaintiff's name and driver's license was not a constitutional violation. *Id.* at 140–41, 146–47. In doing so, it held that while "a sheriff executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, . . . [n]or is the official charged with maintaining custody of the accused . . . required . . . to perform an error-free investigation of such a claim," that "detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'" *Id.* at 145–46. Here, in the live complaint David alleges he repeatedly protested his innocence and the prior false arrest on the same warrant.

This Court has also addressed this issue since *Baker*, most notably in *Cannon v. Macon County*, where it recognized that "detention on the basis of misidentification may present a viable § 1983 claim." 1 F.3d 1558, 1562 (11th Cir. 1993). There, the arrest report was filled in by the officer with information from the National Crime Information Center (NCIC) report rather than the plaintiff's driver's license or the plaintiff herself, and the arrest report was then used to justify a seven-day detention. *Id.* at 1560–61. In that case, this Court implemented a "deliberate indifference" standard when determining whether a plaintiff's due process rights have been violated. *Id.* at 1563. It ultimately held that there was enough evidence presented for the jury to justify its finding that the officer had acted with deliberate indifference. *Id.* at 1564.

Another way of establishing a Due Process violation in this context is faulty investigation in the face of innocence claims. *See, e.g., Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007) (Concluding that "the ease with which the evidence exculpating Russo . . . could have been checked," among other factors, prevented summary judgment.); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (Recognizing failing to institute "readily available procedures for decreasing the risk of erroneous detention" could constitute a Due Process violation).

Like David's Fourth Amendment claim, his Due Process claim here alleges myriad facts that plausibly show Appellees' deliberate indifference to his rights, and those facts should be further developed in

discovery and presented to a fact finder. That process would uncover the specific processes used during David's detention, show the ready availability of information to his custodial officers and their failure to investigate his innocence claim, and better illuminate the intimidation he faced during his hearing.

And although the district court's comparison between the number of days David was detained to the plaintiff in *Baker* is temptingly simple, several facts cannot be ignored, especially this early in the process. First, the fact that technology and law enforcement's ability to determine whether someone matches a warrant based on fingerprints, photographs, and numerous other data points has *drastically* improved in the intervening 41 years, and the rise of computer and internet use everywhere, including in Martin County law enforcement since *Baker* must be considered and will certainly play a role in determining liability at trial. Second, the fact that David was detained during the workweek both increased the damages he suffered and, more importantly, removes the holiday weekend justification present in *Baker* for a three-day detention. Finally, and most emphatically, David was already arrested by *this* Sheriff's Office on the same warrant, *and was released within three hours*. Appellees are clearly capable of quickly establishing a false arrestee's innocence, and their obvious failure to do so here should be presented to a fact finder.

II.  **No Appellees are entitled to qualified immunity because Sosa's constitutional rights were violated, and his rights were obvious and established at the time of his arrest and detention.**

Where an officer performs a discretionary duty, an arrest in this case, a two-step test applies to determine whether qualified immunity protects them—a test which should easily apply in David's favor under this Court's clear precedent. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007). Here, David must show that (1) the officers violated his constitutional rights, and (2) that his rights were "clearly established." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For false arrest and false imprisonment claims, this Circuit also conducts an "arguable probable cause" analysis, although there is disagreement regarding which prong the analysis is completed under. *Compare Poulakis v. Rogers*, 341 Fed. Appx. 523, 527 n. 2 (11th Cir. 2009) (noting the disagreement and conducting the analysis under the second prong), *with Skop*, 485 F.3d at 1137 (conducting the analysis under the first prong). The outcome should achieve the same result irrespective of which prong "arguable probable cause" is analyzed, so it will be considered under the second prong here because *Poulakis* is the more recent precedent.

The first prong asks "whether the facts, when viewed in the light most favorable to the plaintiff, establish a violation of the Constitution." *Poulakis*, 341 Fed. Appx. at 527 n. 2 (citing *Saucier*, 533 U.S. at 201).

Because the entire previous section discusses in detail how the facts here establish constitutional Fourth Amendment and Due Process violations, the first prong is clearly met.

Turning to the second prong, neither the arresting officer, nor the booking officer, nor any of the John Doe officers at the station had "arguable probable cause" to arrest David or keep him in detention, and the prohibition on unreasonable seizures and deprivation of liberty without probable cause is both obvious and clearly established. *See Skop*, 485 F.3d at 1143–44.

"Arguable probable cause" exists where "reasonable officers in the same circumstances and processing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotes omitted). But "[w]here, as here, the resolution of disputed critical facts determines on which side of this line the officer's conduct fell," dismissal for failure to state a claim is inappropriate because a "highly disputed factual record[ is] exactly the sort of factual, credibility-sensitive task best left to the jury." *Skop*, 485 F.3d at 1141, 1144 (making these statements in the context of summary judgment). The dispute in *Skop* involved a competing version of events, where the officer claimed he issued an order to the plaintiff and that she ignored the order, while the plaintiff alleged that the officer never issued an order at all. *Id.* at 1141.

25

Similarly, David is alleging here that the officer had access to clear, reliable identifying information about him that differed significantly from the information provided to the officers that arrested and subsequently detained him about the warrant suspect, such that actual and arguable probable cause could not exist. David states he repeatedly informed the arresting officers that he was not the wanted Davis Sosa and the previous false arrest and detention on the same warrant. The information available to each officer and the processes used are necessary facts that must be established in discovery and weighed by a fact finder, not tossed aside here.

As to clear establishment, David's rights were clearly established in two ways. First, while the "right" that a plaintiff must establish should not be drawn too broadly, "exact factual identity with a previously decided case is not required, the conduct must have been clearly unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal citations omitted). Here, while there are a dearth of cases in the 11th Circuit or elsewhere that hold officers liable for false arrests based on mistaken identification of a warrant, there are such cases that find a clear enough establishment of the right to send the case to the jury. *See Maxwell*, 998 F2d at 436; *Cacares*, 646 F. Supp. 2d at 426–27. And second, obvious violations of the Constitution do not need factually similar cases to alert law enforcement officers to their existence. *See Hope v. Pelzer* 536 U.S. 730, 738 (2002) (finding obviousness in an Eighth Amendment case);

26

*Lee*, 284 F.3d at 1198–99 (noting that when "conduct lies so obviously at the very core of what the Fourth Amendment prohibits," obviousness may be established) (internal quotations and citations omitted).

Here, arresting and detaining someone for three days because their common name alone, without a middle name, matches a warrant obviously violates that person's Fourth Amendment and Due Process rights. But even if it is not obvious, the fact that this Court has recognized that proposition, and the fact that other officers have been tried for the same issue serve to put officers on notice that such conduct is wrong.

## III.    A *Monell* claim does exist against government Appellees.

In *McDowell v. Brown*, this Court laid out the three-part test used to establish 42 U.S.C. § 1983 liability on a municipality. 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To do so, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the same policy or custom caused the violation." *Id.* The first prong has been presented in detail in the first section, so that will not be repeated here. As a result, each of the remaining prongs will be addressed in turn.

A. *Government Appellees' custom of ignoring previous false arrests constitutes deliberate indifference to 4th Amendment and Due Process rights.*

Establishing a "custom" for the purposes of *Monell* liability by way of a deficiency that is deliberately indifferent to a constitutional right—here, a deficiency in procedure that allows repetitive arrests of the same innocent person—first requires that the municipality be put on notice of the deficiency. *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009). A municipality can either be put on notice by being aware of a pattern of constitutional violations and failing to address the issue, or is on notice if there is a high enough likelihood that a constitutional violation would occur that the need for safeguards is obvious. *Id.; see also Fairley*, 281 F.3d at 918 (9th Cir. 2002) (upholding *Monell* liability for failing to institute "readily available procedures for decreasing the risk of erroneous detention").

Government Appellees here should be on notice in both respects. Beginning with the latter, it is obvious that if an officer misidentifies an innocent person as a warrant suspect, and the agency learns of the misidentification, then it is highly likely for the same or another officer to make the same mistake again if that person's innocence in regard to the warrant is not recorded.

Here, importantly, David has alleged that there *is* a pattern of such violations that would put Government Appellees on notice—but he has

not been afforded the opportunity for discovery. The Middle District of Florida recognized that pleading on information and belief is acceptable at this stage where the defendant is in control of the relevant facts, and that dismissing a *Monell* claim before discovery where such a fact-based allegation of municipal policy is made. *Hunt v. Gualtieri*, 2016 U.S. Dist. LEXIS 166577, at *11 (M.D. Fla. Dec. 2, 2016) (citing *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011)) (finding that plaintiff sufficiently pled a *Monell* claim against the county jail). This principle should apply here, and David should be afforded the opportunity of discovery to substantiate his claim against Government Appellees.

### B. Government Appellees' custom was the plain and obvious cause of Sosa's false arrest by creating the conditions for repetitious false arrests.

After determining that factual causation is not enough to establish *Monell* liability, *McDowell* "tests" the causal link between a plaintiff's constitutional injury and a municipality's custom or policy by looking at whether the injury was a "plainly obvious consequence" of that custom or policy. 392 F.3d at 1292 (quoting *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 412 (1997)). There, the court found that the plaintiff's injury at the hands of prison medical staff was not a "plainly obvious consequence" of the municipality's budget decisions. *Id.* But other cases have found that

hiring decisions, for example, are a "plainly obvious" cause of constitutional injuries. *See, e.g., Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001); *Glasscox v. City of Argo*, 2020 U.S. Dist. LEXIS 174658 (N.D. Ala. Sept. 23, 2020); *Romero v. City of Clanton*, 220 F. Supp. 2d 1313 (M.D. Ala. 2002).

Here, Government Appellees' custom of failing to keep adequate records of false arrests of Martin County residents based on misidentification in old warrants was a clear factual cause of David's arrest: But for that record not existing, David would not have been arrested the second time. But David's arrest is also a "plainly obvious consequence of that policy" as discussed above—if someone is falsely arrested on a warrant for someone with the same name, it is obvious that the same arrest could happen days, months, or years later unless a record of the arrest is made even when, as here, the arrestee explains his innocence and previous arrest and detention on someone else's warrant.

As a final note, this Court should consider David's claim against Government appellees for injunctive relief as part of this decision; while David suffered damages for which he wants restitution, he is also seeking to prevent this harm from occurring to him, or anyone else, in the future through an injunction. To dismiss this claim at this early stage in the litigation for fear of imposing *respondeat superior* on municipal agencies would also prevent the injunction, if granted, from having that effect.

# CONCLUSION

Ultimately, this case is about one simple principle: It cannot be right for law enforcement to arrest and detain otherwise innocent people simply because their common name, and their common name alone, has the misfortune to match one on a warrant. Indeed, this Court recognized that very principle in *Rodriguez*. But the specific contours of that right as applied to this case need not be decided here; doing so requires further fact finding of the *totality of the circumstances* evidence resting almost entirely in the government's hands, that the district court has denied. Therefore, Appellant respectfully asks this Court to reverse the district court's dismissal for failure to state a claim, and remand this case for further proceedings.

/s/ *Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State of Texas Bar No: 00790995
AttorneyKallinen@aol.com
511 Broadway Street
Houston, Texas 77012
Phone: 713.320.3785
Fax: 713.893.6737
Attorney for Appellant

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,238 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word version 16 in Century Schoolbook font size 14.

/s/ *Randall L. Kallinen*
Randall L. Kallinen
Attorney for Appellant

# CERTIFICATE OF SERVICE

I certify that on October 6, 2020, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice to all counsel of record through the Court's ECF System.


*/s/ Randall L. Kallinen*
Randall L. Kallinen
Attorney for Appellant

33