No. 20-12781

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

DAVID SOSA,

Plaintiff-Appellant,

*versus*

MARTIN COUNTY, FLORIDA, SHERIFF WILLIAM SNYDER OF MARTIN COUNTY, FLORIDA *in an official capacity*, DEPUTY M. KILLOUGH, *individually*, DEPUTY SANCHEZ, *individually*, and JOHN DOE MARTIN COUNTY DEPUTIES,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Florida
No. 2:19-cv-14455-DMM

EN BANC BRIEF OF APPELLANT DAVID SOSA

*Submitted by*:
Randall L. Kallinen
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77102
Telephone: 713.320.3785
**Attorney for Appellant**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in 11th Circuit Rule 26.1-1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Arthur, David* — Martin County Attorney's Office — Attorney for Appellee Martin County;

*Barranco, Summer* — Purdy, Jolly, Giuffreda, Barranco & Jisa, P.A. — Attorney for Appellees Martin County, Killough, Sanchez, and Snyder;

*Doe, John* — Martin County Sheriff's Office Deputies — Defendants-Appellees

*Gilbert, Harris* — Gilbert & Smallman PLLC — Attorney for Appellant;

*Kallinen, Randall* — Kallinen Law PLLC — Attorney for Appellant;

*Killough, M.* — Defendant-Appellee;

*Martin County, Florida* — Defendant-Appellee

*Middlebrook, Donald* — United States District Judge in the Southern District of Florida;

*Sanchez* — Defendant-Appellee

*Snyder, William* — Martin County Sheriff's Office — Defendant-Appellee;

*Sosa, David* — Plaintiff-Appellant.

i

## STATEMENT REGARDING ORAL ARGUMENT

The basis of this lawsuit is factually intensive, and Appellant respectfully suggests that the Court would benefit from hearing oral arguments. David Sosa moves pursuant to Federal Rule of Appellate Procedure 34(a) to add this case to the argument calendar. This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) the decisional process would be significantly aided by oral argument. Further elucidation beyond the cold facts in the briefs would assist the Court in these proceedings. Appellant seeks a reversal of the district court based upon the application of the overlooked facts in this case to the law, in addition to legal error, and it is an understanding of the nuances in these facts that oral argument would benefit.

# TABLE OF CONTENTS

Certificate of Interested Persons                                    i

Statement Regarding Oral Argument                          ii

Table of Contents                                                       iii

Table of Citations                                                       iv

Jurisdictional Statement                                             vi

Statement of the Issues                                              vi

Statement of the Case                                                1

    **Course of Proceedings**                              1

    **Statement of Facts**                                     2

    **Standard of Review**                                    4

Summary of the Argument                                         5

Argument                                                                   6

    **1. David Sosa has more than plausibly alleged an overdetention in violation of his Fourteenth Amendment rights because he alleged that Appellees chose not to conduct a routine procedure for three days without reason.**                                 7

    **2. David Sosa's right to be free from this kind of overdetention was clearly established by 2018, both by case law on the issue and by the obviousness of the violation.**                         13

Conclusion                                                                16

Certificate of Service                                                 17

Certificate of Compliance                                         17

## TABLE OF CITATIONS

**CASES**

*Alcocer v. Mills*, 906 F.3d 944 (11th Cir. 2018) ........................................ 8, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 4

*Baker v. McCollan*, 443 U.S. 137 (1979) ........................................ 8, 12, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ........................................ 4

*Bickley v. Caremark RX, Inc.*, 461 F.3d 1325 (11th Cir. 2006) ...................... 4

*Cannon v. Macon County*, 1 F.3d 1558, 1562 (11th Cir. 1993) ........... 8, 9, 14

*Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002) ........................................ 12

*Id.* at 1564 ....................................................................................... 9

*J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248 (11th Cir.
2018) ........................................................................................... 13

*Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010) .......................... 14

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ............................ 11

*Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257 (11th Cir. 2013) .................... 4

*Patel v. Lanier Cty.*, 969 F.3d 1173 (11th Cir. 2020) ................................. 13

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) ............................ 12

*Sosa v. Martin Cty.*, 13 F.4th 1254 (11th Cir. 2021) ........................... passim

*Sosa v. Martin Cty.*, No. 20-12781, 2022 U.S. App. LEXIS 229 (11th Cir.
Jan. 4, 2022) ................................................................................. 2

*Tucker v. Phillips*, No. 21-12370, 2022 U.S. App. LEXIS 4179 (11th Cir.
Feb. 15, 2022) ............................................................................... 13

Rᴜʟᴇs

Fed R. Civ. P. 12(b)(6) ................................................................... 4

# JURISDICTIONAL STATEMENT

Jurisdiction exists under 28 U.S.C. § 1331 federal question jurisdiction because this case arises under 42 U.S.C. § 1983 for an alleged violation of Appellant's civil rights. Jurisdiction also exists under 28 U.S.C. § 1343(3) to redress the deprivation of Appellant's civil rights. This Court has jurisdiction under 28 U.S.C. § 1291 as an appeal from the final decision of a district court, and under Federal Rule of Appellate Procedure 4.

This case was originally filed on November 19th, 2019, and the order dismissing the case was entered on June 24th, 2020. The order dismissing the case disposed of all parties' claims. The original panel opinion, *Sosa v. Martin County*, 13 F.4th 1254 (11th Cir. 2021), was issued on September 20th, 2021, and was vacated and voted to be reheard *en banc* by a majority of judges in this Circuit on January 4th, 2022.

# STATEMENT OF THE ISSUES

1. Did David Sosa plausibly allege an overdetention in violation of his Fourteenth Amendment substantive due-process rights?

2. Assuming he did, was the violation clearly established in April 2018?

# STATEMENT OF THE CASE

**Course of Proceedings**

David Sosa originally filed this civil rights lawsuit in the United States District Court for the Southern District of Florida on November 19th, 2019.[1] He filed claims under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, and Fourteenth Amendment rights as a result of his false arrest and overdetention.[2] He sought to hold liable the individual officers responsible for his arrest and detention (both named and unnamed), as well as the Sheriff in his official capacity, the Sheriff's Office, and Marin County, which is in charge of the Sheriff's Office for their policies and practices which caused the violations to his constitutional rights.[3] After Defendant-Appellees' initial motions to dismiss were filed, Plaintiff-Appellant amended his complaint for the first and only time on March 9th, 2020.[4]

Martin County filed its motion to dismiss on March 16th, 2020,[5] and the other Defendants-Appellees followed suit on March 19th, 2020.[6] The district court granted their motions to dismiss on June 25th, 2020, closing

---

[1] Doc. 1.

[2] Doc. 1.

[3] Doc. 1.

[4] Doc. 18.

[5] Doc. 19.

[6] Doc. 22.

1

the case.[7] Plaintiff-Appellant filed his notice of appeal on July 24th, 2020.[8] On appeal, the original panel reversed the district court as to the Fourteenth amendment overdetention claims against Killough, Sanchez, and the John Doe Martin County Deputies.[9] A majority of judges on this Court then voted *sua sponte* to rehear this case *en banc*.[10]

## Statement of Facts

David Sosa has lived in Martin County, Florida with his family since 2014.[11] He is one among many thousands of "David Sosas" in the United States.[12] In November of 2014, David was stopped in a routine traffic stop by a Martin County sheriff's deputy.[13] After running a warrant check, the deputy identified a warrant for a "David Sosa" that was arrested in Harris County, Texas for selling crack cocaine in 1992.[14] He was arrested on the warrant, but maintained his claim to innocence.[15] He asked if any of his identifying information matched that on the warrant; it did not.[16] The

---

[7] Doc. 32.

[8] Doc. 33.

[9] *Sosa v. Martin Cty.*, 13 F.4th 1254 (11th Cir. 2021) (vacated for rehearing, *see* n. 10.).

[10] *Sosa v. Martin Cty.*, No. 20-12781, 2022 U.S. App. LEXIS 229 (11th Cir. Jan. 4, 2022) (en banc).

[11] Doc. 18 ¶ 21.

[12] Doc. 18 ¶¶ 1–20.

[13] Doc. 18 ¶ 35.

[14] Doc. 18 ¶ 22.

[15] Doc. 18 ¶ 36.

[16] Doc. 18 ¶ 36.

identifiers that did not match the warrant included: date of birth, a substantial height difference, forty-pound weight difference, one tattoo on the warrant suspect versus the tattoo-less Plaintiff-Appellant, and Social Security number.[17] He was fingerprinted, detained for three hours, and released upon further investigation.[18] No record was made that this David Sosa was not the warrant suspect.[19]

On April 20, 2018, David was again pulled over by a sheriff's deputy for a routine traffic stop, and was again arrested on the same warrant despite his claim of innocence and pointing out the different identifiers.[20] He continued to protest his innocence to the deputies at the jail in which he was detained, who assured him that they would look into his claim.[21] The day after his arrest, he was afforded a hearing before a magistrate; as he attempted to explain his innocence, he was threatened by Martin County jailers into silence, and he believed it was a crime to speak with the judge.[22] Three *days* later on the afternoon of April 23, 2018, he was finally released after being fingerprinted again.[23] Over the course of his detention, he missed work, was

---

[17] Doc. 18 ¶¶ 22, 41.

[18] Doc. 18 ¶¶ 37–38.

[19] Doc. 18 ¶ 38.

[20] Doc. 18 ¶¶ 39–43.

[21] Doc. 18 ¶ 43.

[22] Doc. 18 ¶ 44.

[23] Doc. 18 ¶ 45.

unable to inform his employer of his absence, and had to pay to recover his truck, which had been impounded.[24] Again, no record was created.[25]

## Standard of Review

On appeal, motions to dismiss are considered *de novo*.[26]

A court may only dismiss a complaint as a matter of law where the plaintiff fails to state a claim upon which relief may be granted.[27] A complaint must survive when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28] The Court must accept the Plaintiff's well-pled facts as true, and view them in the light most favorable to the Plaintiff, making reasonable inferences and resolving contested facts and factual ambiguities in the Plaintiff's favor.[29] Plausibility under this standard is unrelated to probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."[30] Read in combination with Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts

---

[24] Doc. 18 ¶ 46.

[25] Doc. 18 ¶ 47.

[26] *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013).

[27] Fed R. Civ. P. 12(b)(6).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

[29] *Miyahira*, 715 F.3d at 1265; *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006).

[30] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

4

are not necessary," as the pleadings need only provide "fair notice of what the . . . claim is and the grounds upon which it rests."[31]

## SUMMARY OF THE ARGUMENT

David Sosa was falsely arrested twice by the same sheriff's office because he was misidentified on the same 27-year-old warrant. The first time he was arrested, he was fingerprinted and identified and released in three hours. The second time, the *same* sheriff's office held him for three *days* before a simple and routine fingerprint check proved his innocence claim. His second, three-day detention forms the basis for his § 1983 claim. His complaint alleged violations of the Fourth, Fifth, and Fourteenth Amendments for his false arrest and overdetention, which were all dismissed below. This Court's first panel correctly reversed the district court on the overdetention claim and remanded for further proceedings.

It was correct to determine that Appellees had overdetained David because by looking at the overdetention precedent in *Baker* and *Cannon*, it is clear that officers cannot keep a warrant detainee for an extended period of time while simultaneously doing nothing to determine whether or not they are the person in the warrant. These two cases also serve as endpoints to set up the broad principle that governs this specific situation, and in doing so makes it clear that no reasonable officer in Appellees' position would have believed that waiting three days to run a routine fingerprint check in the face

---

[31] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations omitted).

of a largely substantiated innocence claim is acceptable, especially when the same person had previously been arrested and released on the same warrant. Thus, David overcomes Appellees' qualified immunity defense. Moreover, Appellees' conduct is so obviously unconstitutional that they would not be entitled to qualified immunity even absent *Cannon*'s clear establishment of his rights in 1993.

## ARGUMENT

On April 20, 2018, David Sosa was pulled over for a routine traffic stop, and was arrested solely because his name (and only his name) matched a 27-year-old warrant. He was detained for three days before Appellees finally decided to run his fingerprints and realized they had the wrong man—despite having arrested and released him three and a half years prior on the same warrant in just three hours.

The original panel correctly reversed the district court by reinstating David's Fourteenth Amendment overdetention claim. On the facts alleged, Appellees have no justification for waiting three days for performing the simple task of fingerprinting David, and their decision to do so makes out a clear violation of the Fourteenth Amendment under existing precedent. Looking at those same facts, Appellees' qualified immunity defense also fails, because their conduct is both controlled by the clearly established precedent of this Circuit, and obviously violates the Fourteenth Amendment. Thus, David will demonstrate each of those points in turn.

But before doing so, it is worth examining the broad pattern of conduct that Appellees seek to justify. David Sosa was arrested in Florida on a 27-year-old warrant from Harris County, Texas, even though significant identifiers such as his height, date of birth, and Social Security Number all differed from those on the warrant. The risk of *not* detaining David in this situation was negligible at best; the odds that *this* David Sosa—half the country and nearly three decades removed from the crime—was *the* David Sosa from the warrant were infinitesimally small, and even if he *was* that David Sosa, the statute of limitations for his crime was long past, and there was no evidence that he had continued his life of crime, or that he posed any threat of crime or violence to Martin County. But despite these odds, David was arrested on this warrant twice. And despite these odds and the ease of confirming what the evidence provided by the identifiers already suggested, Appellees want this Court to endorse their ability not to detain David, but to hold him unnecessarily for three days simply because they chose not to perform standard procedures. Such conduct cannot stand.

1. **David Sosa has more than plausibly alleged an overdetention in violation of his Fourteenth Amendment rights because he alleged that Appellees chose not to conduct a routine procedure for three days without reason.**

In this Circuit, overdetention claims may be made where detention continues after a person is entitled to release, even if probable cause

supported the detention to begin with.[32] Analyzing such a claim generally begins by examining the Supreme Court's standard in *Baker v. McCollan*.[33] There, the Court found that the plaintiff's three-day detention over a holiday weekend based on a warrant intentionally designed to frame the plaintiff was not a constitutional violation.[34] In doing so, it held that while "a sheriff executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, . . . [n]or is the official charged with maintaining custody of the accused . . . required . . . to perform an error-free investigation of such a claim," that "detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'"[35]

This Court has also addressed this issue since *Baker*, most notably in *Cannon v. Macon County*, where it recognized that "detention on the basis of misidentification may present a viable § 1983 claim."[36] There, an arrest report was filled in by the officer with warrant information from a National Crime Information Center (NCIC) report of a different person with the same name, rather than the plaintiff's driver's license or the plaintiff herself,

---

[32] *Alcocer v. Mills*, 906 F.3d 944, 953 (11th Cir. 2018).

[33] 443 U.S. 137 (1979).

[34] *Id.* at 140–41, 146–47.

[35] *Id.* at 145–46.

[36] 1 F.3d 1558, 1562 (11th Cir. 1993), *opinion modified on reh'g on other grounds*, 15 F.3d 1022 (11th Cir. 1994).

8

and the arrest report was then used to justify a seven-day detention because it matched the warrant.[37] In that case, this Court implemented a "deliberate indifference" standard when determining whether a plaintiff's due process rights have been violated.[38] It ultimately held that there was enough evidence presented for the jury to justify its finding that the officer had acted with deliberate indifference.[39] The original panel's opinion stated the standard for deliberate indifference here as a showing that: "(1) the defendant's subjective knowledge of a risk of serious harm in the form of continued detention even after the plaintiff had a right to be released; (2) disregard of that risk; and (3) disregard by conduct that is more than mere negligence."[40]

The original panel had it right. In its own words:

> the[] allegations sufficiently establish that Sanchez and other deputies at the jail had enough information to know (1) that a substantial possibility existed that Sosa was not the wanted Sosa and (2) that they had the means readily available to rapidly confirm Sosa's identity. Yet they took no action for three days and nights while Sosa sat in jail. Finally, after Sosa spent three nights in jail, an unnamed deputy followed up on the information Sosa had provided them. And when an unidentified deputy did so by taking Sosa's fingerprints—a standard police tool long used

---

[37] *Id.* at 1560–61.

[38] *Id.* at 1563.

[39] *Id.* at 1564.

[40] *Sosa v. Martin Cty.*, 13 F.4th 1254, 1267 (11th Cir. 2021) (citing *Alcocer*, 906 F.3d at 953).

9

by every U.S. police force—that deputy was easily and quickly able to confirm that Sosa was not the wanted Sosa.[41]

Based on this reasoning, it correctly concluded that the allegations are "sufficient to support Sosa's claim that these defendants were deliberately indifferent towards Sosa's due-process rights."[42]

Put differently, the allegations directly meet each individual element of the deliberate indifference standard applicable to this case. The Appellees had specific, subjective knowledge of the risk of the continued detention of a misidentified person, because David informed them that this had happened before and pointed out specific identifiers that did not match up, and they acknowledged the risk by agreeing to look into it.[43] They then disregarded the risk by not taking any steps toward verifying his claim for three days.[44] Their conduct went beyond mere negligence because (a) the fingerprinting that proved David's innocence was a fast, standard, and readily available procedure that had previously gotten him out of jail in only three hours before,[45] and (b) they actively prevented him from attempting to prove his innocence to the magistrate one day into his detention.[46]

While it may be easy to point to the constitutionality of a three-day detention in *Baker* and say that it should apply here, the original panel was

---

[41] *Id.* at 1268.

[42] *Id.* at 1268–69.

[43] Doc. 18 ¶¶ 41–43.

[44] Doc. 18 ¶ 45.

[45] Doc. 18 ¶¶ 38, 45; *Sosa*, 13 F.4th at 1268 n. 4.

[46] Doc. 18 ¶ 44.

right to avoid that pitfall, because doing so would mistake *Baker* as a bright-line rule even though one was not created and would ignore the actual legal reasoning that led to the result.[47] Several facts cannot be ignored in undertaking that analysis. First, both technology and law enforcement's ability to determine whether someone matches a warrant based on fingerprints, photographs, and numerous other data points (all of which are now searchable by computer) have drastically improved in 46 years between Linnie McCollan's arrest and David Sosa's, which must be considered and will certainly play a role in determining liability at trial. Second, the fact that David was partially detained during the workweek both increased the damages he suffered and, more importantly, removes the holiday weekend justification present in *Baker* for a three-day detention.[48] Moreover, unlike in *Baker*, running fingerprints is a standard procedure that can be completed by a single deputy and is not dependent on access to physical records or whether or not it is a business day. Multiple deputies were present when David was originally detained and processed, multiple deputies were present

---

[47] *Sosa*, 13 F.4th at 1269–74 (discussing the legal reasoning in *Baker* and how it applies to this case) (citing in part *Lee v. City of Los Angeles*, 250 F.3d 668, 684 (9th Cir. 2001) (explaining that the language from Baker stating that "after the lapse of a certain amount of time," "depending on what procedures the State affords defendant [] following arrest and prior to trial," means that "the mistaken incarceration of an individual in other circumstances may violate his or her right to due process") (other citations omitted). While certain overlapping points will be made presently comparing this case to *Baker*, Appellant wholly adopts the cited portion panel's opinion by reference.

[48] Doc. 18 ¶¶ 39, 45, 46.

11

the following day when David was brought before the magistrate, and it is reasonable at this stage to infer that multiple deputies were present throughout his detention.[49] Finally and most emphatically, David was already arrested by the exact same sheriff's office on the exact same warrant, and was released within three *hours*.[50] Appellees are clearly capable of quickly establishing a false arrestee's innocence, and their decision not to do so here at least warrants further discovery, and should be presented to a fact finder. And more importantly, it demonstrates the "procedures the State affords defendants following arrest," and that three days is more than enough time for the initial justification to "lapse," depriving David of "'liberty . . . without due process of law.'"[51]

As a final note, other circuits have recognized that another way of establishing a Due Process violation in this context is faulty investigation in the face of innocence claims.[52] The ease and availability of the fingerprinting that ultimately led to David's release fits squarely in this category.

---

[49] Doc. 18 ¶¶ 39, 43, 44.

[50] Doc. 18 ¶ 38.

[51] *Baker*, 443 U.S. at 145.

[52] *See, e.g., Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007) (Concluding that "the ease with which the evidence exculpating Russo . . . could have been checked," among other factors, prevented summary judgment.); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (Recognizing failing to institute "readily available procedures for decreasing the risk of erroneous detention" could constitute a Due Process violation).

12

2. **David Sosa's right to be free from this kind of overdetention was clearly established by 2018, both by case law on the issue and by the obviousness of the violation.**

In this Circuit, "[a] right may be clearly established through 'a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court.'"[53] The cases cited "'need not be directly on point' to clearly establish a right; it simply 'must have placed the statutory or constitutional question beyond debate.'"[54] The panel's opinion summarizes the qualified immunity analysis well:

> We have recognized three ways in which a plaintiff can show that a constitutional right was clearly established at the time of the violation. First, a plaintiff can point to "a materially similar" precedent. Second, he can turn to "a broader, clearly established principle [that] should control the novel facts" of the case under review. Or third, he can demonstrate that the officer's conduct "so obviously violates the Constitution that prior case law is unnecessary."[55]

---

[53] *Tucker v. Phillips*, No. 21-12370, 2022 U.S. App. LEXIS 4179 at *9 (11th Cir. Feb. 15, 2022) (per curiam) (quoting *Patel v. Lanier Cty.*, 969 F.3d 1173, 1186 (11th Cir. 2020)).

[54] *Id.* at *10 (quoting *J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018)) (holding that officers were not entitled to qualified immunity where they effectively took no action in the face of a known suicide risk, despite the ready availability of resources to prevent suicide).

[55] *Sosa*, 13 F.4th at 1275–76 (quoting *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) throughout) (Appellant again adopts the panel's reasoning on this issue in addition to the argument provided here).

13

Here, David points to the second and third methods to overcome Appellees' qualified immunity defense. With respect to the second method, the panel opinion points to *Cannon* to say that since at least 1993, the broad principle that "an officer's '"failure to take any steps to identify' a detainee as the target of a warrant is unconstitutional" was clearly established, and that the conduct here is controlled by that principle.[56] Taking that analysis further, it is worth looking at the boundaries of what was clearly established in this Circuit in 2018 that governs Appellees' conduct here. On one hand, there is *Baker*, which says that it is permissible for officers to take three days over an understaffed holiday weekend to manually go through paper records in order to determine that a detainee who was *intentionally framed* was, in fact, innocent.[57] On the other hand, there is *Cannon*, which says that it is unconstitutional to do nothing to identify whether a warrant detainee is actually the person for which the warrant was issued in the face of persistent claims of innocence.[58] Given those boundaries, Appellees' conduct so clearly and so wholly falls within the bounds of *Cannon* that no reasonable officer in Appellees' position could have believed it was permissible to let David sit in jail for three days and prevent him from speaking freely with a magistrate judge while taking literally no steps toward determining whether or not he was the same David Sosa as the warrant.[59]

---

[56] *Id.* at 1276 (quoting *Cannon*, 1 F.3d at 1564).

[57] *See generally Baker*, 443 U.S. 137.

[58] *See generally Cannon*, 1 F.3d 1558.

[59] Doc. 18 ¶¶ 41–45.

14

With respect to the third method—obviousness—David points to a hypothetical. A person is arrested at noon for shoplifting that morning. Shortly after the person is arrested, the shopkeeper comes to the jail and tells the officers that they have the wrong person. To prove it, the shopkeeper provides officers with a copy of a short, clear CCTV video that shows clear, unobscured images of a different person with a different face, height, build, hair color, complexion, and visible tattoos. The officers thank the shopkeeper, who subsequently leaves. Since the officers have access to the video, it is obvious that they cannot choose to willfully ignore it, and choose not to watch it for several days while their misidentified detainee sits in jail. The evidence is easily accessible, trustworthy, speedy, and wholly in their control, but a decision to ignore it is obviously unconstitutional, because the officers chose not to conduct the process to which their detainee is constitutionally due. Similarly, David is alleging here that each Appellee had quick, easy access to clear, reliable identifying information about him that proved he was not the David Sosa from the warrant, but they chose to ignore it. The first time he was arrested, he was given the process to which he was due, and walked free in three hours. It is obvious that Appellees' choice to ignore that process the second time for three days is not constitutional, and cannot be shielded by qualified immunity.

15

CONCLUSION

This case is an important reminder that our country's justice system was founded on the difficult, but just principle that it is better for ten guilty people to go free than it is for one innocent person to be jailed, which is reflected and guaranteed in rights like those provided by the Fourteenth Amendment. Consideration of that principle is especially important here, where the would-be guarantors of those rights proved themselves capable of doing so once, but chose not to do so when called upon a second time. Moreover, it is worth emphasizing exactly what Appellees are trying to justify: the ability for law enforcement officers to detain the wrong person on a warrant for multiple days at a time, despite easy access and otherwise regular use of technology that would quickly and easily prove or disprove the innocence claim. And they are trying to justify this unjust position in a case where the warrant was for a three-decade-old crime that took place halfway across the country. Therefore, Appellant respectfully asks this Court to again **REVERSE** the district court's dismissal for failure to state a claim, and **REMAND** this case for further proceedings.

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
    Bar No. 00790995
attorneykallinen@aol.com
511 Broadway Street

16

Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
**Attorney for Appellant**

## CERTIFICATE OF SERVICE

I certify that on February 16, 2022, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice to all counsel of record through the Court's ECF System.

*/s/ Randall L. Kallinen*
Randall L. Kallinen
**Attorney for Appellant**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,954 words in total. This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word version 16, and is set in Adobe Caslon Pro, size 14.

*/s/ Randall L. Kallinen*
Randall L. Kallinen
**Attorney for Appellant**

17