[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-12781

_____

DAVID SOSA,

Plaintiff-Appellant,

*versus*

MARTIN COUNTY, FLORIDA,
SHERIFF WILLIAM SNYDER,
of Martin County, Florida in an official capacity,
DEPUTY M. KILLOUGH,
individually,
DEPUTY SANCHEZ,
individually,
JOHN DOE MARTIN COUNTY DEPUTIES,

2                    Opinion of the Court                    20-12781

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:19-cv-14455-DMM

————————————

Before ROSENBAUM and LUCK, Circuit Judges.*

PER CURIAM:

In November 2014, David Sosa was pulled over for a routine traffic stop by a Martin County Sheriff's deputy. But when the officer ran Sosa's name, the computer indicated an outstanding Harris County, Texas, warrant from 1992 for a different David Sosa (the "wanted Sosa"). Though some of the identifying details for the wanted Sosa and Sosa differed, the deputy arrested Sosa and took him back to the station. There, deputies fingerprinted Sosa, and he spent three hours in jail before they determined that he was not the wanted Sosa.

Three-and-a-half years later, Sosa was arrested and detained again on the same outstanding warrant for the wanted Sosa. On April 20, 2018, a different deputy with the Martin County Sheriff's

————————————

*Due to the retirement of Judge Beverly B. Martin, we decide this case by a quorum. *See* 28 U.S.C. § 46(d); 11th Cir. R. 34-2.

Department stopped Sosa as he drove.  Once again, the deputy checked Sosa's name in the computer system and found the same outstanding warrant for the wanted David Sosa.  Sosa told the deputy about his mistaken 2014 arrest on that warrant and advised the deputy of differences between himself and the wanted Sosa.  But Sosa was still arrested and taken back to the station.  This time, though, Sosa had to spend three days and nights in jail before the Department acknowledged that he was not the wanted Sosa and finally released him.

Trying to avoid a third stay at the county jail for someone else's misdeeds, Plaintiff-Appellant Sosa filed this 42 U.S.C. § 1983 suit against the Defendants-Appellees Martin County Sheriff's Department and the deputies involved in his second arrest.  Sosa alleged that the Defendants-Appellees violated his Fourth and Fourteenth Amendment rights by falsely arresting him, overdetaining him, and failing to institute policies and train deputies to prevent these things from happening (the "*Monell* claim"[1]).  The district court dismissed the case with prejudice for failure to state a claim.  *Sosa v. Snyder*, No. 19-CV-14455, 2020 WL 6385696, at *1 (S.D. Fla. June 25, 2020) ("*Sosa I*").  After oral argument, this panel affirmed the dismissal of Sosa's false-arrest and *Monell* claims.  *Sosa v. Martin County*, 13 F.4th 1254, 1264–66, 1276–79 (11th Cir. 2021) ("*Sosa II*"), *vacated and reh'g en banc granted*, 21 F.4th 1362 (11th Cir. 2022).  But as to Sosa's Fourteenth Amendment claim based on

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

overdetention, the panel vacated the district court's order dismissing the overdetention claim and remanded for further proceedings. *Id.* at 1266–76.

Before the mandate issued, though, the en banc Court vacated the opinion and granted en banc rehearing on the overdetention claim only. *Sosa v. Martin County*, 21 F.4th 1362 (11th Cir. 2022). This Court sitting en banc held that Sosa's detention for three days and nights in jail based on mistaken identity did not give rise to a substantive-due-process claim under the Fourteenth Amendment. *Sosa v. Martin County*, No. 20-12781, 2023 WL 328389, at *4 (11th Cir. Jan. 20, 2023) ("*Sosa III*") ("[U]nder *Baker*, Sosa's complaint did not state a claim for a violation of his due-process rights."). The en banc Court remanded the case to the panel for further proceedings so that we could reconsider Sosa's Fourth Amendment and *Monell* claims. *See id.* Our judgment on those claims remains unaffected by the en banc Court's decision and reasoning in *Sosa III.* So for the same reasons we explained in *Sosa II*, we affirm the district court's dismissal of Sosa's Fourth Amendment and *Monell* claims.

## I.

This is an appeal of an order dismissing Sosa's case for failure to state a claim, so for purposes of our analysis, we accept as true the factual allegations from Sosa's First Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to that filing, while Sosa was driving in Martin County, in November 2014, a Martin County Sheriff's deputy pulled him over for a routine traffic stop. During the encounter, the deputy reviewed Sosa's driver's license. After running Sosa's name through the Department's computer system, the deputy learned that an outstanding warrant for a David Sosa had been issued out of Harris County, Texas, in connection with the wanted Sosa's conviction for selling crack cocaine in 1992. The warrant set forth identifying characteristics for the wanted Sosa, including his date of birth, height, weight, tattoo information (he had at least one), and other details. Plaintiff-Appellant Sosa pointed out to the officer that his own date of birth, height, and weight—a 40-pound difference between himself and the wanted Sosa existed—did not match the information for the wanted Sosa and that, unlike the wanted Sosa, he had no tattoos. The deputies arrested Sosa, anyway, and took him to the station.

There, they fingerprinted and detained him. After about three hours, a deputy determined that Sosa was not the wanted Sosa and released him. No one created a file or otherwise documented that Sosa was not the wanted Sosa. Nor did the Sheriff's Department have any system to prevent Sosa's future mistaken arrest on the wanted Sosa's warrant.

Not too long after Sosa's 2014 incident, he was again arrested and detained on the same warrant in 2018. On April 20, 2018, a different deputy of the Martin County Sheriff's Department, Deputy Killough, pulled Sosa over for a traffic stop. Sosa

provided Deputy Killough with his license, and when Deputy Killough ran it, he discovered the open warrant for the wanted Sosa. Sosa explained that he was not the wanted Sosa and told Deputy Killough he had previously been incorrectly arrested on that warrant and released when deputies realized the error. Sosa also noted that he and the wanted Sosa did not share the same birthdate, Social Security number, or other identifying information. Sosa was arrested anyway.

When Deputy Killough took Sosa to the Martin County jail, Sosa "repeatedly explained to many Martin County employees . . . that his date of birth and other identifying information was different than the information on the warrant for the wanted . . . Sosa." Doc. No. 18, at 8 ¶ 43. In particular, Sosa so advised Deputy Sanchez and some other Martin County deputies in the booking area, who wrote down Sosa's information and told him they would follow up on the matter. The next day, Sosa appeared by video before a magistrate judge. Though Sosa attempted to explain the mistaken identity, "several Martin County jailers threatened him and told him not to talk to the judge during his hearing." *Id.* at 8 ¶ 44. As a result, Sosa believed it was a crime to talk to the judge.

Finally, on April 23, deputies fingerprinted Sosa and then released him at about 3:00 p.m. Again, the Sheriff's Department did not create a file or other documentation to prevent Sosa from being re-arrested on the same warrant.

Sosa filed suit against Martin County and the individual deputies. In his Amended Complaint, he brought a single count under

42 U.S.C. § 1983 for violations of his constitutional rights. The claim asserted that Martin County, the Sheriff's Department, and the individual deputies violated Sosa's Fourth and Fourteenth Amendment rights by arresting and detaining him without probable cause or reasonable suspicion. It also alleged that the Sheriff and the County lacked adequate written policies and failed to train and supervise the deputies properly concerning arrests on outstanding warrants.

Sosa's complaint sought injunctive relief precluding the Martin County Sheriff's Department from arresting and detaining Sosa on the wanted Sosa's warrant, requiring the Sheriff and the County to maintain a file on Sosa as it relates to the wanted Sosa's warrant, and directing the Sheriff and the County to implement policies and train employees to avoid arresting and detaining individuals who are not wanted but who have the same names as those for whom a warrant is outstanding. The complaint also demanded compensatory and punitive damages and attorney's fees and costs.

Martin County moved to dismiss and separately, the Sheriff, Deputy Killough, and Deputy Sanchez filed their own motion to dismiss. The County first asserted that it could not be held responsible for the Sheriff's actions. In the alternative, it, along with the Sheriff, contended Sosa failed to make out a *Monell* claim because he did not establish that they had a policy or custom that caused the deprivation of his rights. Deputies Killough and Sanchez asserted that they were entitled to qualified immunity.

The district court granted the motions to dismiss. It concluded that the deputies did not violate Sosa's constitutional rights with either their arrest or detention of Sosa, so it did not reach the question of qualified immunity on either issue. As for Sosa's *Monell* claim against Martin County and the Sheriff in his official capacity, the court determined that Sosa could not succeed on it because he failed to show that the deputies had violated his constitutional rights.

As we have mentioned, the en banc Court agreed with the district court on the overdetention claim and concluded that Sosa could not show a constitutional violation. On remand from the en banc Court, then, we address only Sosa's Fourth Amendment and *Monell* claims. *See Sosa III,* 2023 WL 328389, at *4.

## II.

We review *de novo* an order dismissing a case under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). In so doing, for purposes of our analysis, we accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id.* To survive a motion to dismiss, the complaint must include enough factual matter "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.

Our discussion proceeds in two parts.  In Part A, we address Sosa's claims of false arrest and conclude that Deputy Killough is entitled to qualified immunity.  In Part B, we consider Sosa's *Monell* claim and conclude that Sosa has failed to allege enough facts to make out a plausible *Monell* claim.

### A. *Deputy Killough is entitled to qualified immunity on Sosa's false-arrest claim.*

Turning to Sosa's claim of false arrest, we first explain our jurisprudence on qualified immunity and then determine whether Deputy Killough is entitled to qualified immunity.

### 1. <u>The Doctrine of Qualified Immunity</u>

Qualified immunity exists in part "to prevent public officials from being intimidated—by the threat of lawsuits . . . —from doing their jobs." *Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir. 1996).  In the course of their jobs, officers must sometimes rely on imperfect information to make quick decisions.  *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).  Nevertheless, those decisions must be reasonable to fall within qualified immunity's ambit.  *See id.* at 396; *see also Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014).  So when we consider whether an officer is entitled to qualified immunity, we balance "the need to hold [officers] accountable when they exercise power irresponsibly and the need to shield [them] from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted). But it does not extend to an officer who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (citation and emphasis omitted) (alteration in original).

To invoke qualified immunity, a public official must first establish that he was acting within the scope of his discretionary authority when the challenged action occurred. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). When we speak of "discretionary authority," we mean all actions the official took (1) in performing his duties and (2) in the scope of his authority. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). Here, the deputies satisfied this requirement, as they arrested and detained Sosa while performing their official duties.

Because Deputy Killough was acting within the scope of his discretionary authority, the burden shifts to Sosa to demonstrate that qualified immunity is inappropriate. *See id.* To do that, the factual allegations in Sosa's complaint must establish two things: (1) Deputy Killough violated Sosa's constitutional rights not to be arrested on a warrant for a different David Sosa; and (2) those rights were "clearly established . . . in light of the specific context of the case, not as a broad general proposition," at the time of Deputy Killough's actions, so as to have provided fair notice to the deputy

that his actions violated Sosa's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223; *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016).

We next consider whether Deputy Killough is entitled to qualified immunity on Sosa's false-arrest claim.

2. *Deputy Killough's mistaken arrest of Sosa because of misidentification was a reasonable mistake under our jurisprudence.*

As relevant here, the Fourth Amendment, incorporated to apply to the States through the Fourteenth Amendment, *see Baker v. McCollan*, 443 U.S. 137, 142 (1979), protects individuals against unreasonable seizures, U.S. CONST. amend. IV.  Because they involve unreasonable seizures, constitutional claims for false arrest against state public officials arise under the Fourth Amendment. *See Carter v. Butts County*, 821 F.3d 1310, 1319 (11th Cir. 2016) ("An arrest is a seizure . . . .").

An arrest complies with the Fourth Amendment if it is supported by probable cause. *Barnett v. MacArthur*, 956 F.3d 1291, 1296–97 (11th Cir. 2020).  But when the arresting officer raises a qualified-immunity defense, a § 1983 plaintiff must allege sufficient facts to establish that the deputies did not have even arguable probable cause to arrest him. *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1293–94 (11th Cir. 2018).  Probable cause for an arrest exists when the totality of the circumstances renders the arrest objectively reasonable. *Barnett*, 956 F.3d at 1296–97.  And "a probability or substantial chance of criminal activity, not an actual showing of

such activity," satisfies that standard. *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted). As for arguable probable cause, that exists when "reasonable officers in the same circumstances and possessing the same knowledge" as the arresting officer could have thought there was probable cause to arrest the plaintiff. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted).

Where, as here, a warrant has issued, that warrant represents a determination of probable cause. *See United States v. Leon*, 468 U.S. 897, 921 (1984). But because the warrant involved here was for a different David Sosa than Plaintiff-Appellant Sosa, we must engage in an extra layer of analysis to determine whether Deputy Killough's arrest of Sosa on the wanted Sosa's warrant violated Sosa's Fourth Amendment rights. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1345–46 (11th Cir. 2002).

When a valid warrant underlies an arrest, but law-enforcement officers mistakenly arrest the wrong person because of a misidentification, a "reasonable mistake" standard governs the constitutionality of the arrest. *Id.* at 1346. To assess whether a misidentification mistake is "reasonable," we consider the totality of the circumstances concerning the arrest. *Id.* at 1347.

*Rodriguez* aptly illustrates how we have applied this test in practice. There, Joe John Rodriguez was riding as a passenger in a car that an officer pulled over for a traffic stop. *Id.* at 1343. During the stop, the officer asked Rodriguez for identification. *Id.* Rodriguez responded with more than ten pieces of identification,

including his Florida driver's license, birth certificate, military-discharge papers, Social Security card, credit card, and V.A. patient-data card. *Id.* Upon receiving these items, the officer ran a check on Rodriguez's driver's license information. *Id.* at 1344. At some point, he was advised that three warrants existed for a Victor Heredia who used the alias "Joe Rodriguez." *Id.* Among these, a six-year-old warrant out of St. Johns County, Florida, sought Heredia for driver's license-related charges and possession of cocaine. *Id.*; *see also id.* at 1344 nn.6 & 7. After considering the warrant's identifying information for Heredia, the officer believed Rodriguez was Heredia and arrested him. *Id.* at 1345.

We held the officer's misidentification of Rodriguez to be a "reasonable mistake," though we recognized that merely matching the name on the warrant with the arrestee's name, with nothing more, would not have been reasonable. *See id.* at 1346–48. First, we found that "four critical" identifiers for both men were the same: name, sex, age, and race. *Id.* at 1347. We also observed that "[s]ignificant other information was similar," including similar Social Security numbers, addresses in neighboring Florida towns, the same birth state, and similarities in tattoos. *Id.* And even with respect to the different towns for each man's address, we thought "it would not be surprising" for a person who uses an alias to also use a false address and birthdate. *Id.* at 1347 n.13 (citation omitted). We did not find differences in eye color or in scars to be meaningful, considering the availability of contact lenses and cosmetic surgery. *Id.* at 1347 n.14. And we were similarly unimpressed with

weight differences, since weight varies, "especially over six years." *Id.* In contrast, we found only one material difference in the identifying information for the two men: Rodriguez said he was 5'11", and Heredia was 5'6". *Id.* at 1347.

But considering all the other similarities and the officer's on-the-fly assessment of Rodriguez's height, we concluded that the officer's arrest of Rodriguez was "a reasonable mistake." *Id.* at 1347–49. As we explained, "[t]he question is not whether the police could have done more; but whether they did just enough." *Id.* at 1347 n.15. And "small difference[s]" between the person arrested and the person listed on the warrant—especially ones that can easily be explained—are not enough to render an arrest on a valid warrant unreasonable. *Id.* at 1347–48.

Applying *Rodriguez* here, we conclude that Deputy Killough's mistaken arrest of Sosa on the wanted Sosa's warrant was "reasonable" within the bounds of the Fourth Amendment, under our jurisprudence. We begin by recognizing that the arrest occurred during a roadside stop, which limited Deputy Killough's ability to investigate Sosa's claims of mistaken identity. *See id.* at 1347 n.15 ("Trials of guilt or innocence cannot be undertaken by police officers on the side of the road in the middle of the night before an officer can effect a lawful arrest pursuant to a valid warrant."); *cf. Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989) ("This is not a case where time was of the essence in making the arrest. [The defendant] had at least three months to resolve his doubts about [the plaintiff's] identity." (citation omitted)).

Next, we look at the similarities and discrepancies between the warrant information and Sosa's descriptive information.  Sosa's name and sex were the same as the wanted Sosa's.  Sosa also did not allege any difference between his and the wanted Sosa's race.  And while Sosa alleged that the two men's birthdates were "entirely different,"[2] he did not assert that there was any significant difference in the men's ages.  We have previously described the name, sex, race, and age characteristics as "critical."  *Rodriguez*, 280 F.3d at 1347.  As for differences, Sosa identified a forty-pound weight difference and the fact that the wanted Sosa had a tattoo

---

[2] Sosa's First Amended Complaint averred that, in contrast to the wanted Sosa, Sosa "had an entirely different date of birth, substantial height difference, . . . and other identifying characteristics easily viewed on the warrant, [Sosa]'s driver license[,] and [Sosa] himself."  Doc. No. 18, at 4 ¶ 22.  These allegations are conclusory and do not impart meaningful factual information that allows us to evaluate whether, in fact, the differences between the two men's dates of birth, heights, and "other identifying characteristics" not otherwise specified would qualify as material under the reasonable-mistake test.  *Iqbal*, 556 U.S. at 678–79 (a plaintiff "does not unlock the doors of discovery . . . armed with nothing more than conclusions").  For instance, though the two birthdates are "entirely different," we do not know whether that means a one-year or a 25-year difference between the ages of Sosa and the wanted Sosa exists.  Nor do we know whether the height difference between the two was three inches, five inches (as in *Rodriguez*), or a foot, so we cannot assess whether that difference is legally "substantial," for purposes of our analysis.  For that reason, these allegations "are not entitled to the assumption of truth" that generally attaches to factual allegations in a complaint on a motion to dismiss, and we cannot consider them.  *Id.* at 679.

while Sosa had none.  We also note that the warrant was out of Texas, while Sosa was a Florida resident.

These differences Sosa alleged were not material, viewed in the totality of the circumstances.  Significantly, 26 years had passed between when Harris County issued the warrant for the wanted Sosa and when Sosa was arrested.  That figures heavily into our analysis.  We have previously observed that weight is "easily variable," particularly over a number of years, so that is a difference of not "much importance."  *Id.* at 1347 n.14.

We have also characterized as a difference of not "much importance," in view of the passage of time, an arrestee's lack of a scar where the wanted individual had one, since cosmetic surgery allows for changes in skin appearance.  *Id.*  Tattoos can likewise be removed using similar procedures.  And here, not only had 26 years elapsed, but also Sosa did not allege the location of the tattoo, so we do not know whether the area where the tattoo was supposed to have been was readily observable at the time of the arrest.  Finally, the passage of time also renders insignificant the fact that the warrant issued out of Texas, while Sosa lived in Florida.  Sosa could have relocated from Texas to Florida in the intervening 26 years.

When we consider all these circumstances, keeping in mind that Deputy Killough compared the warrant information to Sosa's information on the side of the road during a traffic stop, we must conclude that his error in arresting Sosa on the wanted Sosa's warrant was not unreasonable by Fourth Amendment standards under our jurisprudence.

B. *Sosa's Monell claim fails to allege a plausible pol-icy, custom, or practice that caused Sosa's alleged constitutional injury.*

Finally, we consider Sosa's Fourteenth Amendment sub-stantive-due-process *Monell* claim against Martin County and the Sheriff. Under *Monell*, a plaintiff may maintain a § 1983 action against a municipal government when it has a policy, custom, or practice that causes a constitutional injury. 436 U.S. at 690–91. But a municipality cannot be held liable under § 1983 on a theory of vicarious liability. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

To succeed on a *Monell* claim, a plaintiff must prove that (1) something that qualifies as an official local-government policy (2) was the "moving force" that "actually caused" (3) the plaintiff's constitutional injury. *See Connick v. Thompson*, 563 U.S. 51, 59 n.5 (2011) (citations omitted); *see also McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

An official local-government policy can be a decision by a municipality's lawmaking body, an act by a policymaking official, or a municipal custom—that is, a "practice[] so persistent and wide-spread as to practically have the force of law." *Connick*, 535 U.S. at 61. Besides these things, a municipality's decision not to train employees on their legal duty not to violate citizens' rights can also constitute an official government policy subjecting the municipal-ity to liability under § 1983. *Id.*; *see also Lewis v. City of W. Palm*

*Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009). But to qualify as a policy, the municipality's failure to train must "evidence[] a deliberate indifference to the rights of its inhabitants." *Lewis*, 561 F.3d at 1293 (citation omitted).

Establishing deliberate indifference requires the plaintiff to "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and . . . made a deliberate choice not to take any action." *Id.* (citation omitted). A plaintiff may do this by pointing to evidence that municipal policymakers "are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61.

Generally, to satisfy this notice requirement, a plaintiff must prove a pattern of similar constitutional violations by untrained employees. *Id.* at 62. But "in a narrow range of circumstances," a plaintiff may avoid the need to show a pattern of similar violations to prove deliberate indifference. *Id.* at 63 (citation omitted). That is so when "the unconstitutional consequences of failing to train [are] . . . patently obvious," *id.* at 64, meaning that a high likelihood exists that the situation will recur frequently and that the officer's lack of specific tools to respond to that situation will predictably violate citizens' constitutional rights, *Brown*, 520 U.S. at 409. The Supreme Court has identified but a single example of this situation: a municipality's failure to train officers about the constitutional limits on the use of deadly force though arming the officers with guns and expecting to use them in the course of their duties. *See*

*Connick*, 563 U.S. at 63; *see also City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989).

As for *Monell*'s causation prong, when it comes to a failure-to-train claim, the plaintiff must establish that a hypothetically well-trained officer would have acted in a way that would have prevented the injury to the plaintiff. *See City of Canton*, 489 U.S. at 391.

Sosa argues that two of the County's and Sheriff's alleged "policies" caused him constitutional injury: (1) the failure to train deputies to properly verify that an individual arrested based on an outstanding warrant is, in fact, the subject of that warrant, and (2) the lack of a policy or custom of keeping records to identify those who have previously been arrested because of misidentification on outstanding charges for another person with the same or similar name.

Here, the first alleged policy Sosa challenges—the Sheriff and Martin County's ("County Defendants") alleged failure to train deputies to correctly identify a person as a wanted person—cannot support a *Monell* claim. For starters, Martin County cannot be liable for Sosa's arrest because Sosa did not suffer a constitutional injury when he was arrested. As we have explained, Deputy Killough did not violate Sosa's Fourth Amendment right when he arrested Sosa on the wanted Sosa's warrant.

Martin County also cannot be liable for the lack of action by its deputies at the jail who failed to correctly identify Sosa. That is

so because the en banc Court has concluded that the three-day-and-three-night overdetention did not violate Sosa's constitutional rights. As a result, Sosa has failed to allege enough facts to make out a plausible *Monell* claim on this first alleged policy.

Next, we turn to Sosa's second alleged policy: the failure to keep records so that those who have previously been misidentified as a wanted person will not be so misidentified again on the same warrant. This alleged policy was not passed by the local government. Nor does the need for keeping a records system to ensure a person is not mistakenly arrested twice on the same warrant for someone else with the same or similar name rise to the level of obviousness that the Supreme Court's example of the need to train officers with guns does.

So we consider whether Sosa sufficiently alleged a pattern of similar constitutional violations that should have put Martin County on notice that its deputies were regularly violating people's rights by rearresting them on the same outstanding warrant because of a misidentification error. For purposes of our analysis, we assume a meaningful difference between the duty of an individual deputy to avoid unreasonably mistakenly arresting a person as a wanted person and the duty of a sheriff's department as an entity to prevent the unreasonably mistaken rearrests of a person on a wanted person's warrant. *See Barnett*, 956 F.3d at 1301 (explaining that "municipal liability can exist if a jury finds that a constitutional injury is due to a municipal policy, custom, or practice," even if "no officer is individually liable for the violation").

But even assuming that a county may inflict constitutional injury on a person by mistakenly arresting him a second time or more on the same warrant because of a misidentification, the district court did not err in dismissing Sosa's *Monell* claim. Sosa did not allege enough facts to show that the Sheriff's Department had a pattern of rearresting the wrong person on a warrant because of mistaken identity based on the arrestee's name.

True, Sosa himself was rearrested once. But as to the County's notice *at the time of Sosa's rearrest*, which is what we must evaluate, Sosa alleges only that "[u]pon information and belief Martin County has arrested many innocent individual[s] because they failed to exclude a person based upon different identifying information between the detainee and the actual person wanted for a warrant." Doc. No. 18, at 11 ¶ 59. To be sure, facts based "upon information and belief" may support a claim when facts "are not within the knowledge of the plaintiff but he has sufficient data to justify" an allegation on the matter. 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1224 (3d ed. 2012). But here, Sosa points to no data other than his own rearrest (which, obviously and as we have noted, did not occur before his own rearrest) to support his information-and-belief allegation. *Connick*, 563 U.S. at 63 n.7; *Knight ex. rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 820 (11th Cir. 2017). For that reason,

Sosa did not plead enough facts to set forth a *Monell* practice claim,[3] and the district court did not err in dismissing that claim.[4]

## IV.

We affirm the district court's dismissal of Sosa's Fourth Amendment and *Monell* claims.

**AFFIRMED.**

---

[3] Nevertheless, if the Sheriff has no policy on or practice of maintaining records concerning those who have been mistakenly arrested on a warrant for another person, because the two have the same or similar names, he takes his chances that another mistakenly rearrested person may be able to establish a pattern and practice based on Sosa's rearrest and, if appropriate, on information and belief.

[4] The County also argues that Sosa's *Monell* claim should fail because it is not a proper defendant in this case since it does not control the Sheriff's office. We need not reach this argument because we conclude that, in any event, Sosa's *Monell* claim fails because he has not sufficiently alleged a municipal policy or custom. As we have explained, Sosa has not alleged a pattern of similar constitutional violations that would show that the County's decision not to train its deputies constitutes an official government policy.